**TAKUMI PARTNERS LLP**
Robert W. Brownlie (Bar No. 138793)
robert.brownlie@takumillp.com
Noah Katsell (Bar No. 217090)
noah.katsell@takumillp.com
Chaz R. Glick (Bar No. 348605)
chaz.glick@takumillp.com
10920 Via Frontera, Suite 550
San Diego, California 92127
Telephone: (858) 357-8001

Attorney for Defendant
Thomas Giordano-Lascari

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIELS TROOST, et al., | CASE NO. 2:26-cv-00631-AH-MAR |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT THOMAS GIORDANO-LASCARI'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| v. | |
| GAURAV SRIVASTAVA a/k/a "G", et al., | |
| Defendants. | Date:  September 23, 2026 |
| | Time: 1:30 PM |
| | Ctrm: 9C, 9th Floor |
| | Judge: Hon. Anne Hwang |

# TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ............................1

II.     THE FAC SHOULD BE DISMISSED AGAINST LASCARI....................5

    A.      Plaintiffs' Alleged Claim that Lascari Conspired with His Clients Should Be Dismissed on Public Policy Grounds..................................6

    B.      Plaintiffs Fail to Allege a Valid RICO Claim.......................................9

        1.      Plaintiffs Allege Only Foreign Injuries. ....................................9

        2.      Plaintiff Fails to Allege a RICO Enterprise.............................14

        3.      Plaintiffs Fail to Allege Sufficient Facts Showing that Lascari Directed the Affairs of a RICO Enterprise. ...............15

        4.      Plaintiffs' Allegations that Lascari Committed Wire Fraud and Money Laundering Are Not Factually Supported and Belied by the Messages Reproduced in the FAC. ...................19

        5.      Plaintiffs Fail to Allege Facts Sufficient to Show that Lascari Conspired to Commit a RICO Violation. ...................20

    C.      Plaintiffs Fail to Allege Fraud or Conversion against Lascari. .........21

    D.      Plaintiffs Fail to Allege a 17200 Claim against Lascari....................21

III.    PLAINTIFFS SHOULD NOT BE GIVEN LEAVE TO AMEND .............22

IV.     CONCLUSION .................................................................................23

# TABLE OF AUTHORITIES

Page(s)

Cases

*Allen v. City of Beverly Hills*,
  911 F.2d 367 (9th Cir. 1990)..................................................................................30

*Ascon Props., Inc. v. Mobil Oil Co.*,
  866 F.2d 1149 (9th Cir. 1989)...............................................................................30

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................................................................29

*Aversano v. Greenberg Traurig, LLP*,
  753 F. Supp. 2d 1063 (C.D. Cal. 2010).................................................................21

*Azrielli v. Cohen L.*,
  *Offs.*, 21 F.3d 512 (2d Cir. 1994) .........................................................................24

*Baum v. Duckor, Spradling & Metzger*,
  72 Cal.App.4th 54 (1999)......................................................................................11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .....................................................................................7, 25, 29

*Brouwer v. Raffensperger, Hughes & Co.*,
  199 F.3d 961 (7th Cir. 2000).................................................................................28

*Cain v. Superior Ct.*,
  110 Cal. App. 5th 639 (2025).................................................................................13

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*,
  824 F.3d 1156 (9th Cir. 2016)..................................................................................5

*Canadian-Am. Oil Co. v. Delgado*,
  108 F.3d 1384 (9th Cir. 1997)..................................................................................5

*Cisneros v. Petland, Inc.*,
  972 F.3d 1204 (11th Cir. 2020)........................................................................25, 27

*Dixon v. State Bar*,
  32 Cal. 3d 728 (1982).......................................................................................12, 13

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014).............................................................................passim

*Goren v. New Vision Int'l, Inc.*,
  156 F.3d 721 (7th Cir. 1998).................................................................................28

*Howard v. Am. Online Inc.*,
  208 F.3d 741 (9th Cir. 2000).................................................................................28

*Kracht v. Perrin, Gartland & Doyle*,
  219 Cal.App.3d 1019 (1990).............................................................................10, 11

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*,
  940 F.2d 397 (9th Cir. 1991)......................................................................................7
*LD v. United Behav. Health*,
  508 F. Supp. 3d 583 (N.D. Cal. 2020) ......................................................................23
*Los Angeles Lakers, Inc. v. Fed. Ins. Co.*,
  637 F. Supp. 3d 801 (C.D. Cal. 2022)........................................................................5
*Los Angeles Lakers, Inc.*,
  637 F. Supp. 3d......................................................................................................29
*McDermott, Will & Emery v. Superior Court*,
  83 Cal.App.4th 378 (2000)................................................................................passim
*Miccosukee Tribe of Indians of Fla. v. Cypress*,
  814 F.3d 1202 (11th Cir. 2015)................................................................................26
*National Football League Properties, Inc. v. Superior Court*,
  65 Cal.App.4th 100 (1998).........................................................................................9
*Ray v. Spirit Airlines, Inc.*,
  126 F. Supp. 3d 1332 (S.D. Fla. 2015) ...............................................................25, 27
*Reves v. Ernst & Young*,
  507 U.S. 170 (1993) ............................................................................................23, 24
*RJR Nabisco v. Eur. Cmty.*,
  579 U.S. 325 (2016) .................................................................................14, 15, 16
*Rutman Wine Co. v. E. & J. Gallo Winery*,
  829 F.2d 729 (9th Cir. 1987)....................................................................................29
*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
  313 F. Supp. 3d 1056 (N.D. Cal. 2018) ....................................................................14
*United States v. Turkette*,
  452 U.S. 576 (1981) ............................................................................................21, 23
*W. Min. Council v. Watt*,
  643 F.2d 618 (9th Cir. 1981)......................................................................................6
*Walter v. Drayson*,
  538 F.3d 1244 (9th Cir. 2008).......................................................................23, 24, 25
*Yegiazaryan v. Smagin*,
  599 U.S. 533 (2023) .................................................................................................16
*Yerkyn v. Yakovlevich*,
  164 F.4th 224 (2d Cir. 2026)....................................................................................17

Statutes

18 U.S.C. § 1343...........................................................................................................29
18 U.S.C. § 1962...........................................................................................................29
Cal. Bus. & Prof. Code § 6068 .......................................................................................12
Cal. Bus. & Prof. Code § 17200 ...................................................................................4, 29
Cal. Evid. Code § 952....................................................................................................11

iii

fa

Rules

Fed. R. Civ. P. 8(a)(2)......................................................................................................6
Fed. R. Civ. P. 9(b) ................................................................................................... 7, 28
Fed. R. Civ. P. 12(b)(6) ..................................................................................................5

fa

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' First Amended Complaint, Dkt # 78 ("FAC"), fails to even attempt to address nearly all of the deficiencies in their original complaint identified in Thomas Giordano-Lascari's ("Lascari's") prior motion to dismiss. The FAC cannot cure those deficiencies simply because Plaintiffs' alleged claims against Lascari are fundamentally flawed. Where Plaintiffs have attempted to address the deficiency, Plaintiffs have only inserted general, conclusory allegations that are legal conclusions masquerading as facts that fail to provide the particularity required by Rule 9(b). The FAC continues to fail to state a valid claim against Lascari and, therefore, should be dismissed with prejudice and without leave to amend.

This case involves Niels Troost ("Troost"), a Dutch citizen, residing in Switzerland,[1] who trades Russian oil globally.[2] After Russia invaded Ukraine, the international community sought to curtail Russian oil sales. But Troost continued to peddle Russian oil. The United Kingdom, European Union and Switzerland responded by imposing sanctions on Troost and his companies.[3] In an attempt to deflect responsibility for his illegal conduct, Troost has engaged in a global media and litigation campaign, which includes this case, against his perceived enemies.

The bulk of the FAC describes Troost's incredible story claiming that Defendant Gaurav Srivastava ("Srivastava") supposedly convinced Troost that Srivastava worked as a covert CIA operative with direct access to the President of the United States, leaders of the Senate and House of Representatives, the CIA, "former U.S. military officers and intelligence officials, an ex-banker and U.S. lawyers."[4] Troost claims that these individuals were either unwitting or in the case

---

[1] FAC ¶¶ 8, 79.

[2] FAC ¶ 8.

[3] Complaint and Demand for Jury Trial, etc., Dkt #1 ("Complaint") ¶¶ 2, 13.

[4] FAC ¶¶ 1-2, 4.

of Defendants herein "knowing and intentional members" of the so-called "Srivastava Enterprise" or the "Enterprise."[5] According to Troost, Srivastava told Troost that the Enterprise could assist Troost to sell his sanctioned Russian oil.[6] Troost's continuing efforts to traffic in Russian oil resulted in the imposition of EU, UK and Swiss sanctions against him.

None of those allegations pertain to Lascari.

Lascari is a highly respected Los Angeles attorney, whose practice focuses on representing high net worth individuals. He is recognized in *Chambers* for his expertise in this field. Stripped of its general, argumentative allegations about Lascari that fail to comply with Rule 9(b), the FAC's factual allegations show that Lascari assisted clients to purchase a home through limited liability companies ("LLCs") to protect their privacy, obtain related financing, receive money in the United States from foreign nationals held in foreign banks, establish a charitable foundation and make donations to charities. All of this is consistent with Lascari's representation of high net worth individuals. These allegations do not state a single valid claim against Lascari.

The allegations against Lascari are in stark contrast to those made against Defendants Global Energy Law Group PC and Owen Onouye (collectively, "Onouye"). The allegations against Onouye, which are assumed to be true on this motion to dismiss, show that Onouye directly participated in the alleged scheme to convince Troost that Srivastava was a CIA operative and assisted him to obtain funds from Troost based on Srivastava's supposed (and unbelievable) ability to manipulate the United States government.[7] Thus, while the allegations involving the "Program," "CIA operatives," Russian oil trading, etc. attempt to show that Onouye

---

[5] FAC ¶¶ 1-4.

[6] FAC ¶¶ 12, 170-71, 192, 216-18.

[7] FAC ¶¶ 6-7, 109, 121, 208-10, 313, 315.

played a part in that supposed scheme, Plaintiffs do not allege that Lascari had any involvement with it whatsoever because he was not involved.

Nevertheless, Plaintiffs attempt to drag Lascari into this case based on allegations that hinge on their assertions that Lascari conspired with his clients to harm Troost and various Swiss and United Arab Emirates (the "UAE") entities controlled by him. To effectively defend such claims, Lascari would need to rely on communications protected by the attorney-client privilege. Lascari, however, cannot waive the privilege held by his clients. Lascari's professional duties thus prevent him from defending against Plaintiffs' claims. In similar circumstances, courts have found that allowing a plaintiff to assert claims against an attorney when the attorney's professional duties prevent him from defending such claims is against public policy. Therefore, public policy bars Plaintiffs here from pursuing such claims against Lascari. Plaintiffs' entire case against Lascari should be dismissed for this reason alone.

Plaintiffs' alleged RICO claims against Lascari and the other defendants involve no domestic injury. Domestic injury must be pled and proven for a RICO claim. Insofar as Plaintiffs' allegations show any injury, such injury occurred in Switzerland and the UAE. Therefore, Plaintiffs' First and Second Causes of Action against Lascari should be dismissed.

Plaintiffs' alleged RICO claims also require Plaintiffs to plead the existence of a RICO enterprise. A RICO enterprise must exist apart from the alleged racketeering activities in which the enterprise allegedly engaged. Here, Plaintiffs fail to define the alleged enterprise with particularity. They vaguely describe the enterprise by the alleged unlawful activities in which Plaintiffs claim it engaged. Therefore, Plaintiffs fail to allege an enterprise and, for this reason, their First and Second Causes of Action against Lascari should be dismissed.

Plaintiffs' First Cause of Action for violation of Section 1962(c) requires them to allege specific facts showing that Lascari directed or participated in the

3

fa

management of an alleged enterprise. Even if it were assumed that Plaintiffs adequately alleged the existence of an enterprise, Plaintiffs only generally assert legal conclusions that Lascari participated in the management of the purported enterprise. The FAC, however, is devoid of a single factual allegation to support those general, legal conclusions. Indeed, the facts alleged by Plaintiffs show that Lascari performed legal services for and at the direction of his clients. Simply performing services for an enterprise, assuming that one existed, is insufficient to show participation in it. Therefore, Plaintiffs' First Cause of Action against Lascari should also be dismissed for this reason.

Plaintiffs' Second Cause of Action for violation of Section 1962(d) requires them to allege facts showing that Lascari conspired to participate in a RICO enterprise or commit two or more predicate acts. Alleging a conspiracy requires Plaintiffs to state facts showing that Lascari entered an agreement to participate in the conspiracy. No such facts are alleged. Therefore, Plaintiffs' Second Cause of Action should also be dismissed against Lascari for this reason.

Plaintiffs' Third and Fourth Causes of Action for fraud and conversion rely on Plaintiffs' allegation that Defendants defrauded Plaintiffs into believing that Srivastava was a covert CIA agent and related matters. Plaintiffs allege no facts showing that Lascari made any such misrepresentations or participated in this aspect of their case. Consequently, both causes of action should be dismissed against Lascari.

Plaintiffs' Fifth Cause of Action for violation of Business and Professions Code Section 17200 is based on their fraud claim, RICO claims and alleged wire fraud. Plaintiffs failed to allege facts supporting these underlying claims against Lascari. Therefore, Plaintiffs' Fifth Cause of Action against Lascari should be dismissed.

For these reasons, as detailed below, Lascari respectfully requests that his motion to dismiss be granted with prejudice and without leave to amend.

## II.    THE FAC SHOULD BE DISMISSED AGAINST LASCARI

"A complaint may be dismissed for failure to state a claim only when it fails to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016). "When considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court must accept — as true — all factual allegations, unless they are legal conclusions, threadbare recitals of the elements of a claim, or not factually plausible." *Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, 637 F. Supp. 3d 801, 805 (C.D. Cal. 2022). Thus, "[i]n deciding a Rule 12(b)(6) motion, courts do not 'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Canadian-Am. Oil Co. v. Delgado*, 108 F.3d 1384 (9th Cir. 1997), quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

On a motion to dismiss, courts also consider Federal Rule of Civil Procedure Rule 8(a)(2). "Rule 8 requires a complaint to include 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Fed.R.Civ.P. 8(a)(2). To meet this requirement, the Supreme Court has held that an 'entitlement to relief' requires 'more than labels and conclusions.... Factual allegations must be enough to raise a right to relief above a speculative level.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007).

Further, where, as here, a complaint sounds in fraud and, particularly, attempts to allege civil RICO claims based on mail or wire fraud, the complaint must comply with Rule 9(b) of the Federal Rules of Civil Procedure. *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991) ("The Ninth Circuit has repeatedly insisted that this rule be followed in RICO actions alleging the predicate act of mail fraud.") "Federal Rule of Civil Procedure 9(b) requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *Id.*

**A.    Plaintiffs' Alleged Claim that Lascari Conspired with His Clients Should Be Dismissed on Public Policy Grounds.**

Plaintiffs' alleged claims against Lascari are premised on his participation in an alleged conspiracy with his clients against Plaintiffs. Lascari's absolute duty to preserve his clients' confidences hamstrings his ability to defend himself from such claims. In similar circumstances, California courts have held that maintaining a claim against an attorney is against public policy. The same principle should be applied here.

*McDermott, Will & Emery v. Superior Court*, 83 Cal.App.4th 378 (2000) held that a case against outside corporate counsel sued derivatively on behalf of a corporate client could not proceed because, absent a waiver of the attorney-client privilege by the corporate client, the defendant attorney was effectively foreclosed from mounting any meaningful defense. *Id.* at 383–84. There, the law firm moved for judgment on the pleadings, arguing in part that the action was contrary to public policy because it required the firm to defend against malpractice allegations without the ability to disclose privileged communications. *Id.* The trial court denied the motion. *Id.* The Court of Appeal reversed, granting a peremptory writ of mandate. *Id.* at 385–86.

In reaching its conclusion, the court began from the premise that "[i]t is the corporation, and not the shareholder, who is the holder of the privilege." *Id.* at 383 (citing *National Football League Properties, Inc. v. Superior Court*, 65 Cal.App.4th 100, 109 (1998)). Consequently, shareholders "do not enjoy access to such privileged information merely because the attorney's actions also benefit them," and they do not "obtain the right to waive the privilege simply by virtue of filing the action on the corporation's behalf." *Id.* Without a waiver by the actual client, the attorney defendant was "effectively foreclosed from mounting any meaningful defense" and was placed in the "untenable position of having to 'preserve the attorney client privilege … while trying to show that his representation of the client

fa

was not negligent.'" *Id.* at 383-84 (quoting *Kracht v. Perrin, Gartland & Doyle*, 219 Cal.App.3d 1019, 1024 (1990)). The court therefore held that, in the absence of a legislatively created shareholder right to waive the privilege, the derivative action could not go forward. *Id.* at 385-86.

McDermott's reasoning was not limited to derivative actions. The court's analysis rested on the broader principle that any claim requiring an attorney to disclose privileged communications to mount a defense — where the client has not waived the privilege — cannot proceed. The court drew an explicit analogy to the rationale prohibiting assignments of legal malpractice claims, observing that "the rationale used to prohibit all assignments of legal malpractice actions, on the ground attorneys would be unable to defend such actions in the absence of a waiver of the privilege by their own client, applies with equal force here." *Id.* at 385 (citing *Kracht*, 219 Cal.App.3d at 1024; *Baum v. Duckor, Spradling & Metzger*, 72 Cal.App.4th 54, 67 (1999)).

Here, Plaintiffs' claims against Lascari depend on their allegations that Lascari participated with his clients in an alleged RICO enterprise or conspired with them to do so. To establish their claims, Plaintiffs must prove, at a minimum, an unlawful agreement or plan between Lascari and his clients and conduct in furtherance of that plan. Thus, every meaningful aspect of Plaintiffs' case against Lascari involves discussions with his clients, communications of his clients' objectives to him, the advice he gave, and his recommended strategies to achieve his clients' goals. Such matters fall squarely within the attorney-client privilege. *See* Cal. Evid. Code § 952. An effective defense by Lascari would require him to depend on the same privileged information. However, he is not the holder of the privilege and cannot waive it for his clients. *See id.* at § 953(a); *McDermott, Will & Emery v. Superior Court*, 83 Cal.App.4th at 383-84. Consequently, the attorney-client privilege prevents Lascari from defending against Plaintiffs' claims.

/////

---

fa

Moreover, Lascari is bound by an even broader constraint on his ability to defend himself imposed by Business & Professions Code Section 6068, which demands that an attorney "[t]o maintain inviolate the confidence, and *at every peril to himself* or herself to preserve the secrets, of his or her client." Cal. Bus. & Prof. Code § 6068(e)(1) (emphasis added). Section 6068 requires that an attorney protect "the honor and reputation of" his client. *Dixon v. State Bar*, 32 Cal. 3d 728, 735 (1982). Thus, "the statutory duty of confidentiality sweeps more broadly [than the attorney-client privilege]. The duty of confidentiality is generally recognized to encompass more than simply communications with clients. It covers any 'information [acquired] as a "direct and proximate result" of the attorney-client relationship.'" *Cain v. Superior Ct.*, 110 Cal. App. 5th 639, 669–70 (2025) (concurring op.), quoting *Dixon*, 32 Cal. 3d at 735. Therefore, Lascari has no practical ability to defend himself against Plaintiffs' claims.

Just as the shareholder-plaintiffs in *McDermott* were not the holders of the privilege and could not waive it, Plaintiffs here hold no right to compel disclosure of privileged attorney-client communications. And just as the law firm in *McDermott* was incapable of defending a malpractice action without waiving the privilege, Lascari faces the identical dilemma: an effective defense to the conspiracy allegations requires disclosure of confidential communications that remain protected unless and until his client waives that protection. His broad statutory duty of confidentiality prevents him from even introducing evidence that "there was no agreement to commit fraud" because any such evidence would implicate what was actually communicated between attorney and client.

Because Lascari cannot effectively defend himself due to his duty to preserve the attorney-client privilege, Plaintiffs' alleged claims against him should be dismissed on public policy grounds.

/////

/////

MPA IN SUPPORT OF DEFENDANT THOMAS GIORDANO-LASCARI'S MOTION TO DISMISS FAC
CASE NO. 2:26-CV-00631-AH-MAR

fa

**B.**     **Plaintiffs Fail to Allege a Valid RICO Claim.**

Plaintiffs' First and Second Causes of Action are for alleged RICO violations. "The RICO statute sets out four elements: a defendant must participate in (1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity or collection of unlawful debt." *Eclectic Props. E., LLC*, 751 F.3d at 997. Additionally, "[i]n order to state a RICO claim, a plaintiff must 'allege and prove a domestic injury to business or property' because RICO "does not allow recovery for foreign injuries.'" *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1078 (N.D. Cal. 2018), quoting *RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 354 (2016).

Just as in the Complaint, Plaintiffs fail to allege in the FAC domestic injury or the existence of an enterprise. Consequently, both of their RICO causes of action against Lascari should be dismissed. Plaintiffs also fail to allege facts showing that Lascari participated in a RICO enterprise to the extent that they have pled that an enterprise existed at all or that Lascari conspired to participate in an enterprise. Finally, Plaintiffs' conclusory allegations against Lascari fail to show that he committed wire fraud, the racketeering activity alleged against him. Thus, Plaintiffs' First and Second Causes of Action against Lascari should be dismissed for these reasons as well.

**1.**     **Plaintiffs Allege Only Foreign Injuries.**

"Section 1964(c) requires a civil RICO plaintiff to allege and prove a domestic injury to business or property and does not allow recovery for foreign injuries." *RJR Nabisco*, 579 U.S. at 354. The Supreme Court explained that "[a]llowing recovery for foreign injuries in a civil RICO action, including treble damages, presents the … danger of international friction." *Id.* at 348. Such "potential for international controversy … militates against recognizing foreign-injury claims without clear direction from Congress," which the Court found is not present in the RICO statute. *Id.* at 348-49. "A private RICO plaintiff therefore must

9

fa

allege and prove a *domestic* injury to its business or property." *Id.* at 346 (emphasis in original).

"A plaintiff has alleged a domestic injury for purposes of § 1964(c) when the circumstances surrounding the injury indicate it arose in the United States." *Yegiazaryan v. Smagin*, 599 U.S. 533, 549 (2023). For example, in *Yegiazaryan*, the plaintiff alleged "he was injured in California because his ability to enforce a California judgment in California against a California resident was impaired by racketeering activity that largely occurred in or was directed from and targeted at California." *Id.* However, merely alleging "some link" to the United States, such as the use of bank accounts based in the United States, is not sufficient to establish a domestic injury necessary to allege a civil RICO claim. *See Yerkyn v. Yakovlevich*, 164 F.4th 224, 230-31 (2d Cir. 2026).

Here, Plaintiffs allege the legal conclusion that "Plaintiffs' injuries arose in the United States."[8] However, the actual facts alleged show differently. While it is far from certain that any injury was suffered, if there was injury, it was suffered by Troost, a Dutch citizen, residing in Switzerland.[9] Plaintiffs allege that Troost owned all of EZI-DIAROC Holding SA ("EZI"), a Swiss company.[10] EZI in turn owned Paramount Energy & Commodities SA ("PECSA"), a Swiss company founded by Troost.[11] Plaintiffs allege that Troost was deceived into entering a Stock Purchase Agreement through which EZI transferred 50% of PECSA to 1234 Holding SA, a Swiss entity, established by Nicolas Regis Christian Bravard, a Swiss and French citizen residing in Switzerland.[12] Any injury resulting from this transaction would have been in Switzerland.

---

[8] FAC ¶ 429.

[9] FAC ¶ 8.

[10] FAC ¶ 81.

[11] FAC ¶¶ 80-81.

[12] FAC ¶¶ 91, 227.

MPA IN SUPPORT OF DEFENDANT THOMAS GIORDANO-LASCARI'S MOTION TO DISMISS FAC
CASE NO. 2:26-CV-00631-AH-MAR

fa

Plaintiffs allege that Paramount Energy and Commodities DMCC ("PDMCC"), a UAE company based in Dubai, was a wholly owned subsidiary of PECSA, the Swiss company founded by Troost.[13] Plaintiffs allege that PDMCC transferred $11,999,975 to BAB Global LTD, a UAE entity, operated by Sultan Hassan Khalifa Abu Sultan, who appears to be a UAE citizen.[14] Whatever injury may have resulted from this transfer, it was not domestic injury, but rather an injury suffered either in the UAE or Switzerland.

Plaintiffs allege that "Srivastava forged and sent Troost a sham Global Energy Law Group engagement letter demanding a hefty $6,170,250 retainer" and "[o]n July 20, 2022, $6,170,250 of PDMCC's funds made their way through to Global Energy Law Group's U.S. bank account in California."[15] Plaintiffs do not allege how the "funds made their way through to" the account, but it is clear from the context that Troost sent the funds.[16] These allegations, thus, show that if any injury was suffered, it was suffered in the UAE, where PDMCC is domiciled, or in Switzerland, where Troost resided.

Plaintiffs allege Srivastava arranged a $51 million loan from PDMCC, the UAE subsidiary of the Swiss company, PECSA, to the "International Company," which the Complaint alleged was the Arsari Group ("Arsari/International Company").[17] The loan is documented and was signed on November 26, 2022.[18] The

---

[13] FAC ¶ 82

[14] FAC ¶¶ 232, 235.

[15] FAC ¶¶ 20-21.

[16] *Id.*

[17] FAC ¶¶ 24, 71, 256, 260-61; Complaint ¶¶ 101, 105. While it is unclear why, Plaintiffs have provided less particularity around the allegations involving PDMCC's $51 million loan to Arsari in Indonesia, which Plaintiff previously alleged was operated by the brother of Indonesian President Prabowo. The FAC refers to Arsari as "International Company" and Indonesia as "Country-1."

[18] FAC ¶ 261.

MPA IN SUPPORT OF DEFENDANT THOMAS GIORDANO-LASCARI'S MOTION TO DISMISS FAC
CASE NO. 2:26-CV-00631-AH-MAR

loan has a 15-year term and was transacted in Indonesian Rupiah, not US dollars.[19] To the extent this loan resulted in an injury, it took place either in the UAE or Switzerland.[20] These allegations thus fail to show domestic injury.

Plaintiffs allege that Arsari/International Company, the Indonesian conglomerate, later loaned $25 million to Birdsong Central LLC ("Birdsong") via Lascari's law firm's client trust account.[21] Plaintiffs admit that this transaction is documented by three promissory notes given by Birdsong to Arsari/International Company's Indonesian principal.[22] Plaintiffs next allege that "Srivastava did not regard this as a true loan; he was not going to pay it back."[23] But Plaintiffs allege no particular facts to support this conclusory allegation. The FAC does not allege, as required by Rule 9(b), how a loan from Arsari/International Company to Birdsong harmed anyone, much less Plaintiffs. Plaintiffs allege additional attempted or completed transfers from Arsari/International Company.[24] Indeed, if anyone was harmed, it was Arsari/International Company in Indonesia, which is not domestic injury. Insofar as those funds can be traced back to the PDMCC loan to Arsari/International Company, it would not show domestic injury as PDMCC is an entity domiciled in the UAE and the wholly owned subsidiary of a Swiss company, and, again, the loan was made in Indonesia to an Indonesian entity.

Plaintiffs allege that PECSA, the Swiss entity, sent "$6 million from Switzerland" to Paramount Inc., a Wyoming corporation.[25] Plaintiffs do not explain

---

[19] *Id.*; Complaint ¶ 105.

[20] Plaintiffs fail to explain how this loan resulted in injury to PDMCC, PECSA or Troost. Plaintiffs do not allege that the loan has not been repaid. Indeed, the loan will not be due until 2037.

[21] FAC ¶ 263.

[22] FAC ¶ 264.

[23] FAC ¶ 264.

[24] FAC ¶¶ 266-69, 272, 353, 360.

[25] FAC ¶ 278.

how this transfer caused injury, but on its face if there was any injury, it was suffered in Switzerland.

Plaintiffs allege after Paramount Inc. received the wire transfer, Srivastava's assistant at Unity Resources Group sent an email to Troost asking that Lascari be authorized to release $5.2 million from Paramount Inc.'s account.[26] Plaintiffs admit that Troost consented "only on the condition that an invoice be presented documenting legitimate Paramount-related expenses."[27] Lascari then transferred $5.2 million from Paramount Inc. to his firm's trust account and then to "Srivastava personally."[28] Plaintiffs do not allege any facts showing that Lascari was aware of Troost's condition to the transfer. Insofar as these transactions resulted in any injury, Plaintiffs' allegations show that any such injury was suffered by Troost in Switzerland. It was not a domestic injury.

Similarly, Plaintiffs allege that Paramount Inc. sent $50,000 to a company called Orimbo.[29] Plaintiffs once again do not explain how this transaction caused injury other than potential injury to PECSA or Troost in Switzerland insofar as such funds involved the previously alleged transfer from PECSA. Plaintiffs' lack of clarity fails to satisfy their burden to plead with particularity under Rule 9(b).

Plaintiffs allege that $500,000 was transferred "from a bank account in the United States" to a bank account in Switzerland, belonging to Defendant Nicolas Bravard's Swiss Company.[30] While Plaintiffs allege that the funds originated from a US account, they do not explain how it constituted injury, much less domestic injury.

/////

---

[26] FAC ¶ 279-281.

[27] FAC ¶ 280.

[28] FAC ¶ 281.

[29] FAC ¶ 284.

[30] FAC ¶ 288.

fa

Plaintiffs next make a series of allegations about Paramount Inc. paying rent, salaries and other expenses.[31] Plaintiffs do not explain how such payments constituted harm resulting from racketeering activities, much less domestic injury. While Plaintiffs position Paramount Inc. as a plaintiff in an effort to manufacture an argument for the existence of domestic injury,[32] the FAC admits that Srivastava formed the company[33] and apparently controlled its office,[34] and Lascari incorporated the company and served as its director and signatory on its bank account.[35] Moreover, the bulk of Plaintiffs' general allegations merely show that Paramount Inc. received funds from Switzerland and later disbursed or spent those funds, showing harm in Switzerland. Again, no domestic injury is alleged.

### 2.   Plaintiff Fails to Allege a RICO Enterprise.

"Under RICO, an 'enterprise' consists of 'an ongoing organization, formal or informal" that "function[s] as a continuing unit.'" *Aversano v. Greenberg Traurig, LLP*, 753 F. Supp. 2d 1063, 1066 (C.D. Cal. 2010), quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981). "The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages." *Turkette*, 452 U.S. at 583. "To show the existence of an enterprise under the second element [of a RICO claim], plaintiffs must plead that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose." *Eclectic Props. E., LLC*, 751 F.3d at 997. Plaintiffs fail to allege sufficient facts supporting the existence of a RICO enterprise.

/////

---

[31] FAC ¶¶ 288-89.

[32] FAC ¶ 429.

[33] FAC ¶ 289

[34] FAC ¶ 289,

[35] FAC ¶ 277

MPA IN SUPPORT OF DEFENDANT THOMAS GIORDANO-LASCARI'S MOTION TO DISMISS FAC
CASE NO. 2:26-CV-00631-AH-MAR

fa

Here, Plaintiffs continue to only allege an amorphous, ill-defined and potentially vast group of individuals that comprise the "Srivastava Enterprise" or the "Enterprise."[36] Plaintiffs allege that "[t]he Enterprise comprises people and entities, all associated in their common purpose to monetize opportunities with Srivastava."[37] Plaintiffs summarize the alleged enterprise as follows: "For years, Srivastava has used a fairly consistent system—the Srivastava Enterprise—to make his exaggerations and lies plausible and profitable."[38]

Consistent with Plaintiffs' summary, insofar as anyone was benefited by the conduct alleged in the FAC, it was Srivastava.[39] The FAC further alleges Srivastava exerted control over the other Defendants to obtain the alleged benefits through various acts of alleged wire fraud and money laundering.[40] Thus, the FAC only defines the alleged enterprise by the purported pattern of racketeering activity in which it was allegedly engaged, which is insufficient.[41] *See Turkette*, 452 U.S. at 583. Therefore, Plaintiffs have failed to allege this element of a RICO claim, which is necessary to support their First and Second Causes of Action.

### 3. Plaintiffs Fail to Allege Sufficient Facts Showing that Lascari Directed the Affairs of a RICO Enterprise.

Plaintiffs' First Cause of Action under Section 1962(c) also requires them to allege facts showing that Lascari "participate[d] in … the conduct of [the] enterprise." *Eclectic Props. E., LLC*, 751 F.3d at 997. "In order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in *directing* those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179

---

[36] FAC ¶¶ 40, 414.

[37] FAC ¶ 40.

[38] FAC ¶ 40.

[39] *See* FAC ¶¶ 15, 19-26, 245, 253-62, 285, 287, 290-92, 359, 417, 430.

[40] *See* FAC ¶¶ 15, 47, 51-52, 69, 94, 172, 183, 229, 260, 315, 328, 365, 372, 417.

[41] *Id.*

fa

(1993) (emphasis added). Thus, "'to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs,' § 1962(c), one must participate in the operation or management of the enterprise itself." *Id.* at 185. "Relevant considerations to whether this element is met include whether the defendant 'occup[ies] a position in the chain of command ... through which the affairs of the enterprise are conducted,' whether it 'knowingly implement[ed] [the] decisions of upper management,' and whether its 'participation was vital to the mission's success.'" *LD v. United Behav. Health*, 508 F. Supp. 3d 583, 603 (N.D. Cal. 2020), quoting *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008). "Simply performing services for the enterprise does not rise to the level of direction" necessary for liability under Section 1962(c). *Walter*, 538 F.3d at 1249.

Where an attorney has performed legal services, such as writing emails, giving advice and taking positions on behalf of clients does not amount to control of an enterprise. *Id.* at 1248. Allegations that merely show that a defendant was part of an alleged enterprise is insufficient to show that the defendant "had 'some part in directing its affairs.'" *Id.* at 1249, quoting *Reves*, 507 U.S. at 179.

Here, Plaintiff generally alleges that Lascari "wielded legal authority over [Defendant] Cedar West in 2023[,] Lascari functioned as an Enterprise lawyer and possessed the authority within the Enterprise to make decisions concerning the structuring of assets comprising fraudulent proceeds."[42] Plaintiffs also allege that "Lascari took total control over the Srivastava Enterprise's main companies, legally in a superior position to even Gaurav Srivastava."[43] Even if it were assumed that Lascari had some control over entities that were members of an enterprise created by Plaintiffs in an attempt to allege an element of their alleged RICO claims, on its /////

---

[42] FAC ¶ 97

[43] FAC ¶ 417(d)

face, it does not show that Lascari had some part in directing the "Srivastava Enterprise's" affairs. *See Walter*, 538 F.3d at 1249.

Plaintiffs do not allege any facts showing that Lascari made any decisions related to the management or operation of the alleged enterprise. The legal conclusions alleged in paragraph 97 of the FAC admit that Lascari "functioned … as a[] … lawyer" and nowhere do Plaintiffs allege that Lascari made any decisions or took any actions to direct the affairs of the alleged enterprise. Instead, the facts alleged merely show that Lascari performed services for his clients by forming entities, drafting agreements, communicating on behalf of his clients, and receiving and disbursing client funds through his firm's trust account.[44] Structuring legal entities, preparing documents and closing transactions for a client is what lawyers do. *See Azrielli v. Cohen L. Offs.*, 21 F.3d 512, 521-22 (2d Cir. 1994) (allegations that attorneys represented participants in RICO enterprise in the transactions underlying the RICO claim are insufficient to show the attorneys in any way participated in the management or direction of a RICO enterprise). Lawyers also incorporate entities and they serve as directors or other agents of their clients. *See, e.g.,* A.B.A. Standing Comm. on Ethics & Prof. Responsibility, Formal Op. 98-410, Lawyer Serving as Director of Client Corporation p. 2 (Feb. 27, 1998) ("The Committee is aware that it is common for lawyers to be invited to serve on the boards of directors of their clients.") Moreover, limited liability companies or trusts are sometimes used to purchase real estate to protect privacy. *See* Louise Story & Stephanie Saul, *Streams of Foreign Wealth Flows to Elite New York Real Estate*, N.Y. Times, Feb. 7, 2015. Rather than showing that Lascari directed the affairs of the alleged enterprise, Plaintiffs' allegations show that Lascari received direction from his alleged client to perform legal services.[45] *See Walter*, 538 F.3d at 1249

---

[44] FAC ¶¶ 61, 87, 90, 93, 97, 259, 264, 267, 269-82, 288, 353-65.

[45] FAC ¶¶ 262, 272, 365, 417(d).

("Simply performing services for the enterprise does not rise to the level of direction").

Plaintiffs would have the Court infer that Lascari participated in a RICO scheme in the face of an obvious alternative explanation; namely, he performed the services he was hired to perform as an attorney. *See Twombly*, 550 U.S. at 567. This is insufficient to state a RICO claim against Lascari. *See Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1212 (11th Cir. 2020); *Eclectic Props. E., LLC*, 751 F.3d at 999 ("Plaintiffs' preferred reading of the complaint requires us to draw '*implausible*' inferences that Defendants had the specific intent to defraud Plaintiffs." [Emphasis in original]); *Ray v. Spirit Airlines, Inc.*, 126 F. Supp. 3d 1332, 1343 (S.D. Fla. 2015) ("the Court need not accept that inference when there is 'an obvious alternative explanation.'"), *aff'd,* 836 F.3d 1340 (11th Cir. 2016).

That Lascari merely performed services is further shown by the complete absence of any allegations showing that Lascari or his law firm benefitted from the activities of the alleged enterprise. Instead, Plaintiffs specifically allege that Srivastava was the beneficiary of all of the transactions on which Lascari worked.[46] *See Miccosukee Tribe of Indians of Fla. v. Cypress*, 814 F.3d 1202, 1212 (11th Cir. 2015) (general allegations that the attorneys received payment at inflated rates for their services and provided services to individual tribal members at Tribal expense under the auspices of fictitious loan arrangements fail to satisfy *Iqbal* and *Twombly's* plausibility standard to show attorneys participated in a RICO enterprise). Therefore, Plaintiffs have failed to allege a valid claim under Section 1962(c) against Lascari for this reason as well.

/////

/////

/////

---

[46] FAC ¶¶ 97, 245, 251, 253, 262, 264-70, 281-84, 288, 365.

**4.    Plaintiffs' Allegations that Lascari Committed Wire Fraud and Money Laundering Are Not Factually Supported and Belied by the Messages Reproduced in the FAC.**

In their desperate effort to drag Lascari into this case, Plaintiffs allege that Lascari participated in purported acts of wire fraud and money laundering.[47] All of these allegations are not based on facts that are specifically alleged in the FAC. For example, Plaintiffs allege that Lascari acted "[i]n furtherance of a scheme to defraud the Plaintiffs out of money based on the false pretenses that Srivastava was a CIA operative and Troost and the Paramount companies were partnering with the U.S. Government."[48] But the FAC does not allege a single fact showing that Lascari had any knowledge of Srivastava allegedly holding himself out as a CIA operative. Nearly all of the allegations involving Lascari relate to his efforts to obtain funds from Arsari/International Company for his client.[49] While Plaintiff alleges that Lascari "falsely assert[ed] that he had no knowledge of any loan between Paramount and" Arsari/International Company, no facts are alleged showing when or how he learned that information. Indeed, an email reproduced in the FAC from Lascari to Maria Foley, Arsari's representative,[50] reads "I am not aware of a Paramount/Asari loan. You/H will have to sort this out as this is beyond my understanding of the transaction."[51] This message undercuts Plaintiffs' allegations. Missing from Plaintiffs' allegations are any facts showing that the funds from Arsari/International Company were connected to a loan from PDMCC. Moreover, the FAC admits that Lascari's involvement began *after* Arsari/International Company received the loan

---

[47] FAC ¶ 417(e)(i)-(xi).

[48] FAC ¶ 417(e)(i).

[49] FAC ¶¶ 263-70, 272, 353-66.

[50] Complaint ¶ 103.

[51] FAC ¶ 362; Complaint ¶ 207.

19

fa

from PDMCC.[52] Thus, Plaintiffs' own allegations rebut any inference that Lascari participated in any purported scheme or fraud. *See Cisneros*, 972 F.3d at 1212; *Eclectic Props. E., LLC*, 751 F.3d at 999; *Ray*, 126 F. Supp. 3d at 1343.

Plaintiff also alleges that Lascari sent Paramount Inc. funds in violation of Troost's "condition that an invoice be presented documenting legitimate Paramount-related expenses."[53] But like the transfers from Arsari/International Company, the FAC never alleges that Lascari had any knowledge of Troost's condition.

Plaintiffs have simply failed to allege that Lascari had any knowledge of any purported illicit conduct or wrongdoing. Absent such facts, Plaintiffs have only shown that Lascari performed services as a lawyer. This is insufficient to satisfy Plaintiffs' burden to plead facts showing that Lascari participated in racketeering activity or collection of unlawful debt. *See Eclectic Props. E., LLC*, 751 F.3d at 997.

### 5. Plaintiffs Fail to Allege Facts Sufficient to Show that Lascari Conspired to Commit a RICO Violation.

"[T]he touchstone of liability under § 1962(d) is an agreement to participate in an endeavor which, if completed, would constitute a violation of the substantive statute." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 732 (7th Cir. 1998), *holding modified by Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961 (7th Cir. 2000). Thus, "[t]o establish a violation of section 1962(d), Plaintiffs must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).

Here, other than Plaintiffs' conclusory allegations,[54] the Complaint alleges no facts showing an agreement by Lascari to violate RICO or agree to participate in

---

[52] FAC ¶ 262.

[53] FAC ¶¶ 280-81.

[54] FAC ¶ 440.

fa

two or more predicate offenses. As shown above, the Complaint's allegations as to Lascari only show that he provided services for his clients, which is insufficient to show a substantive RICO violation or a conspiracy to violate RICO. Therefore, Plaintiffs' Second Cause of Action should be dismissed for this reason as well.

### C.    Plaintiffs Fail to Allege Fraud or Conversion against Lascari.

Plaintiffs' Third Cause of Action for Fraud and Fourth Cause of Action for Conversion are indiscriminately alleged against all Defendants, including Lascari. Fraud must be alleged with particularity. Fed.R.Civ.P. 9(b).

Plaintiffs base both causes of action on their allegations that Defendants defrauded Plaintiffs or took their funds by: "(1) misrepresenting their connections, relationships, and access to U.S. government officials and national security leaders; (2) falsely representing that Srivastava was a deep-cover 'non-official cover' operative for the CIA; (3) fabricating a covert 'Program' purportedly run by Srivastava that would supposedly ensure that Defendants would be protected by the U.S. government; and (4) falsely guaranteeing that they could prevent Plaintiffs from being sanctioned by the U.S. government."[55] Plaintiffs, however, allege no facts linking Lascari with alleged misrepresentations, much less showing that he made them. For this reason alone, Plaintiffs' Third and Fourth Causes of Action should be dismissed against Lascari.

### D.    Plaintiffs Fail to Allege a 17200 Claim against Lascari.

Plaintiffs' Fifth Cause of Action is for an alleged violation of California Business and Professions Code Section 17200. This alleged claim is also indiscriminately alleged against all Defendants.

Plaintiffs base their Section 17200 claim on the same alleged misrepresentations underlying their Third and Fourth Causes of Action, none of

---

[55] FAC ¶¶ 444, 457.

which are alleged to have been made by Lascari.[56] Plaintiffs also apparently attempt to base their claim on the legal conclusion that "[t]he actions of Defendants violated 18 U.S.C. § 1962 et seq. and 18 U.S.C. § 1343 et seq."[57] These conclusory allegations are insufficient to support a valid claim. S*ee Los Angeles Lakers, Inc.*, 637 F. Supp. 3d at 805. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Twombly*, 550 U.S. at 555. Therefore, Plaintiffs fail to allege a Section 17200 claim against Lascari.

## III.    PLAINTIFFS SHOULD NOT BE GIVEN LEAVE TO AMEND

"Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). "'The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.'" *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990), quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

Here, Plaintiffs' claims are barred by public policy, a defect that cannot be cured by amendment. And Plaintiffs have twice presented complaints suffering from the same deficiencies. Therefore, the Court should exercise its discretion to dismiss the FAC as against Lascari with prejudice and without leave to amend.

/////

/////

/////

/////

/////

---

[56] FAC ¶ 463.

[57] FAC ¶ 464.

fa

## IV.    CONCLUSION

For the reasons set forth above, Lascari respectfully requests that the Court grant his motion to dismiss the FAC against him without leave to amend.

Dated: July 13, 2026                    **TAKUMI PARTNERS LLP**


/s/ *Robert W. Brownlie*

ROBERT W. BROWNLIE
Attorney for Defendant
Thomas Giordano-Lascari

MPA IN SUPPORT OF DEFENDANT THOMAS GIORDANO-LASCARI'S MOTION TO DISMISS FAC
CASE NO. 2:26-CV-00631-AH-MAR

fa

## MEET AND CONFER CERTIFICATION

I certify that on July 2, 2026, I met and conferred with Plaintiffs' counsel by videoconference to thoroughly discuss each and every issue raised in this motion, in an attempt in good faith to resolve the motion in whole or in part. The parties were unable to resolve any of the issues discussed during that meet and confer.

Dated: July 13, 2026                                **TAKUMI PARTNERS LLP**


                                                     /s/ *Robert W. Brownlie*
                                                     ROBERT W. BROWNLIE

# CERTIFICATION OF WORD COUNT

## Local Rule 11-6.2

The undersigned, counsel of record for Defendant Thomas Giordano-Lascari, certifies that this brief contains 6,678 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 13, 2026                    **TAKUMI PARTNERS LLP**


/s/ *Robert W. Brownlie*
ROBERT W. BROWNLIE