ROSEN ✧ SABA, LLP
RYAN D. SABA, ESQ. (State Bar No. 192370)
rsaba@rosensaba.com
ALLISON OWENS, ESQ. (State Bar No. 347908)
aowens@rosensaba.com
2310 Rosecrans Ave, Suite 3180
El Segundo, CA 90245
Telephone: (310) 285-1727
Facsimile: (310) 285-1728

JASON A. MASIMORE, ESQ.
jason.masimore@brodbeckslaw.com
BRODBECKS LAW, PLLC
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (347) 804-1093
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

NIELS TROOST; PARAMOUNT ENERGY & COMMODITIES SA, in liquidation; PARAMOUNT ENERGY AND COMMODITIES DMCC; PARAMOUNT ENERGY & COMMODITIES, INC.; and EZI-DIAROC HOLDING SA,

Plaintiffs,

vs.

GAURAV SRIVASTAVA a/k/a "G" a/k/a "Martin Dukeheimer Berg" a/k/a "Philip Johnson"; SHARON SRIVASTAVA; NICOLAS BRAVARD; CEDAR WEST VENTURES, LLC; UNITY RESOURCES GROUP, INC.; ORBIMO CORPORATION; UNICOM WORLDWIDE, INC.; 1234 HOLDING SA; BIRDSONG CENTRAL LLC; AURORA POINT LLC; THE GAURAV SRIVASTAVA FOUNDATION, f/k/a The Gaurav and Sharon Srivastava Family Foundation; GLOBAL ENERGY LAW GROUP PC; OWEN ONOUYE; THOMAS GIORDANO-LASCARI; and JOHN MAGUIRE,

Defendants.

Case No.: 2:26-cv-00631-AH-MAR

**PLAINTIFFS' OPPOSITION TO THE SRIVASTAVA DEFENDANTS' REQUEST FOR JUDICIAL NOTICE AND OBJECTION TO SALVATY DECLARATION**

Judge: Hon. Anne Hwang
Date: October 7, 2026
Time: 1:30 p.m.
Courtroom: 9C

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. LEGAL STANDARD .......... 2

III. ARGUMENT .......... 3

A. The Court Should Deny Judicial Notice of the News Articles, Blog Posts, Search Results, and Sanctions-Related Web Pages (Exhibits A, H, I, J, K, P, and Q) .......... 3

1. The fact that these articles were in the "public realm" is irrelevant and therefore not a proper basis to grant judicial notice. .......... 3

2. Defendants use the articles for their truth or to ask the Court to draw improper inferences, and what can be noticed is irrelevant. .......... 5

a. Exhibits A & Q .......... 6

b. Exhibits H, I, J, K, and P .......... 7

3. Exhibit P lacks reliability. .......... 8

B. The Court Should Deny Judicial Notice of Court Filings from Other Proceedings (Exhibits B, C, E, F, G, L, M, N, O, and R) .......... 9

1. Exhibits B and C: The Arkin Group's pleading and memorandum of law are used wholesale for the truth of their contents. .......... 10

2. Exhibits E, F, G, and O concern unrelated proceedings and are offered solely to support improper inferences. .......... 11

3. Exhibit L is private correspondence that bears on no issue before the Court. .......... 13

4. Exhibits M and N are automated translations offered for purposes they cannot serve. .......... 13

5. Exhibit R may be noticed as a filing, but Defendants use it only for the court's reasoning. .......... 14

C. The *Forum Non Conveniens* Rationale Does Not Support Notice of Any Exhibit .......... 15

D. The Court Should Decline to Consider the Share Purchase Agreement (Exhibit D), or at Minimum Should Limit Its Consideration to the Provisions Actually Referenced in the FAC .......... 16


2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245

E. Paragraph 20 of the Salvaty Declaration Should Be Stricken ............ 17
IV. CONCLUSION ........................................................................ 17

2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245

2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BCS Bus. Consulting Servs. Pte. Ltd. v. Baker*,
755 F. Supp. 3d 1285 (C.D. Cal. 2024)....................7

*Gerritsen v. Warner Bros. Entm't Inc.*,
112 F. Supp. 3d 1011 (C.D. Cal. 2015)....................5, 6, 8

*Heliotrope General v. Ford Motor Co.*,
189 F.3d 971 (9th Cir. 1999)....................4

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018)....................3, 6, 9, 17

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001)....................6

*M/V Am. Queen v. San Diego Marine Constr. Corp.*,
708 F.2d 1483 (9th Cir. 1983)....................9

*Neilson v. Union Bank of Cal., N.A.*,
290 F. Supp. 2d 1101 (C.D. Cal. 2003)....................9

*Rivera v. Philip Morris, Inc.*,
395 F.3d 1142 (9th Cir. 2005)....................2

*Roar Spirits, LLC v. Sutter Home Winery, Inc.*,
2025 WL 523898 (N.D. Cal. Feb. 18, 2025)....................14

*United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*,
971 F.2d 244 (9th Cir. 1992)....................9, 12

*Tatung Co. v. Shu Tze Hsu*,
43 F. Supp. 3d 1036 (C.D. Cal. 2014)....................15

*Turnacliff v. Westly*,
546 F.3d 1113 (9th Cir. 2008)....................3, 6, 11

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ........ 2, 3, 16

*United States v. Rutgard*,
116 F.3d 1270, 1278–79 (9th Cir. 1997) ........ 4

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
592 F.3d 954 (9th Cir. 2010) ........ 5

*Wyatt v. Terhune*,
315 F.3d 1108 (9th Cir. 2003) ........ 9, 15

*Wynn v. Chanos*,
75 F. Supp. 3d 1228, 1240 (N.D. Cal. 2014) ........ 4, 5

*Xsolla USA, Inc. v. Aghanim Inc.*,
2024 WL 4139615 (C.D. Cal. Sept. 10, 2024) ........ 8

**Rules**

Federal Rule of Evidence 201 ........ *passim*

Federal Rule of Evidence 201(b) ........ 2, 8, 14

Federal Rule of Evidence 901(b)(6) ........ 14



2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245

ROSEN ✧ SABA, LLP
2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245

Plaintiffs Niels Troost ("Troost"), Paramount Energy & Commodities SA ("PECSA"), in liquidation, Paramount Energy and Commodities DMCC ("PDMCC"), Paramount Energy & Commodities, Inc. ("Paramount Inc." and together with PECSA and PDMCC, "Paramount"), and EZI-Diaroc Holding SA (together, the "Plaintiffs"), by undersigned counsel, hereby oppose the Srivastava Defendants' ("Defendants") Request for Judicial Notice ("RJN"), filed in support of their Motion to Dismiss ("MTD") the First Amended Complaint (the "FAC") and Anti-SLAPP Motion to Strike, and object to Paragraph 20 of the Declaration of Paul B. Salvaty ("Salvaty Declaration"), as follows:

## I. <u>INTRODUCTION</u>

In ruling on a motion to dismiss under Rule 12(b)(6), the Court may only consider the allegations contained within the four corners of the pleading. That is black letter law. In utter disregard of that well-settled principle, Defendants, submit an astounding eighteen exhibits (Exhibits A through R), spanning nearly 400-pages of material, and improperly ask the Court to take judicial notice of them in a not-so-subtle attempt to distract from the damning allegations contained in the FAC and spin a counter-narrative for the sole purpose of painting Plaintiffs in an unfavorable light. Defendants' plainly improper request turns the Rule 12(b)(6) standard on its head. What is presented as a routine evidentiary request under Federal Rule of Evidence 201 is instead an attempt by Defendants to have the Court prematurely adjudicate this lawsuit on the merits. That attempt should be rejected.

Defendants' own memorandum confirms the impropriety of their request. Among other things, Defendants submit sanctions-related web pages and press releases, press coverage of Troost prior to this action, and court filings in unrelated proceedings. Yet, these Exhibits appear almost exclusively in their memorandum's background section, untethered to any legal argument, where Defendants quote the factual allegations, investigative conclusions, and characterizations contained in those materials for the express purpose of disparaging Plaintiffs. Defendants

nowhere explain how any of the Exhibits could matter to the Motion to Dismiss, and that silence is the answer.

Defendants' remaining rationale, *forum non conveniens*, fares no better. The only evidence offered for the existence of ongoing Swiss proceedings is a declaration paragraph that lacks personal knowledge and should be stricken, and the exhibits themselves, even if noticed, cannot fill the gap.

At bottom, Defendants seek to leverage these exhibits not to establish the existence of publicly available documents that can be considered on a motion to dismiss, but to construct an alternative factual narrative. This is precisely the kind of improper factual advocacy that Rule 201 prohibits.

## II. LEGAL STANDARD

At the motion to dismiss stage, a court ruling on a Rule 12(b)(6) motion may not ordinarily consider materials outside the pleadings without converting the motion into one for summary judgment under Rule 56. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). A court may, however, consider (1) matters of judicial notice, and (2) documents incorporated by reference in the complaint. *Id.* at 908. These, however, are exceptions to the rule and subject to important limitations.

First, Federal Rule of Evidence 201(b) permits a court to take judicial notice of an adjudicative fact only if it is "not subject to reasonable dispute" because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201. "[A] high degree of indisputability is the essential prerequisite to taking judicial notice of adjudicative facts." *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1151 (9th Cir. 2005) (quoting Fed. R. Evid. 201(a) & (b) advisory committee's notes). A court must therefore proceed cautiously and take judicial notice only when a matter is "beyond reasonable controversy." *Id.* Critically, the inquiry is fact-specific rather than document-specific: "Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within



ROSEN ✧ SABA, LLP
2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245

ROSEN ✧ SABA, LLP
2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245

that document is judicially noticeable for its truth." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). What is more, judicial notice is properly denied where the evidence offered is irrelevant to the motion before the court. *See Turnacliff v. Westly*, 546 F.3d 1113, 1120 n.4 (9th Cir. 2008) (denying request for judicial notice of irrelevant facts).

Second, a court may consider a document incorporated by reference "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908. Neither prong is satisfied by passing reference. "[T]he mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Id.* (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1327 (2d ed.1990)). And a document forms the basis of a claim only where "the claim necessarily depended on the [document]." *Khoja*, 899 F.3d at 1002.

## III. ARGUMENT

### A. The Court Should Deny Judicial Notice of the News Articles, Blog Posts, Search Results, and Sanctions-Related Web Pages (Exhibits A, H, I, J, K, P, and Q)

The request as to Exhibits A, H, I, J, K, P, and Q fails for three independent reasons. First, the presence of information in the public realm is irrelevant to any issue raised by the Motion to Dismiss. Second, Defendants do not in fact use these exhibits to establish public awareness; they use them for the truth of their contents, which are disputed, or to argue a counter-narrative. Third, several of these exhibits are not sources whose accuracy cannot reasonably be questioned. Any one of these grounds requires denial.

#### 1. The fact that these articles were in the "public realm" is irrelevant and therefore not a proper basis to grant judicial notice

Defendants argue that Exhibits A, H, I, J, K, P, and Q are judicially noticeable because "the fact information that such is in the public realm is relevant to the resolution of the plaintiff's claims." (RJN at 1-2.) Exhibit A is a United Kingdom

government press release that discusses sanctions against Troost and Paramount; Exhibits H, I, J, and K are newspaper articles and a blog post published by The Independent, The Wall Street Journal, The Financial Times, and "Whale Hunting" that discuss Defendants' scheme; Exhibit P is a Google news search run by Defendants' counsel together with articles counsel cherry picked; and Exhibit Q is a composite of an EUR-Lex excerpt, a UK Sanctions List entry, and an entry on the privately operated OpenSanctions.org website that also discuss sanctions against Troost.

Plaintiffs do not dispute that a court may take judicial notice of the fact that an article was published and was therefore in the public realm. Unlike in the cases Defendants cite, however, that fact has no bearing on anything this Court must decide.

For example, in *Heliotrope General v. Ford Motor Co.*, the court took judicial notice "that the market was aware of the information contained in news articles submitted by the defendants" in deciding a motion for judgment on the pleadings. 189 F.3d 971, 981 n.18 (9th Cir. 1999). In that securities action, market awareness was relevant to the fraud-on-the-market theory, which is defeated if allegedly concealed information reached the market. *See id.* at 975–76. In *United States v. Rutgard*, the court considered the existence and content of news articles to evaluate an argument about jurors' alleged "exposure to hostile media coverage" because juror exposure was central to the question before the court of whether the defendant was deprived of a fair trial. 116 F.3d 1270, 1278–79 (9th Cir. 1997). And in *Wynn v. Chanos*, the court took judicial notice of SEC filings "not for the truth of the statements they contain, but for the fact that they were filed and provided certain information to the public" in ruling on a motion to dismiss a libel claim because the SEC filings were considered "reliable, readily available" public information for which the defendant could base his statements on, and therefore the court found that plaintiff failed to "establish malice on the basis that a defendant ignored publicly



ROSEN ✧ SABA, LLP
2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245

known information." 75 F. Supp. 3d 1228, 1235, 1239-40 (N.D. Cal. 2014).

Each of these cases involved a narrow, context-specific use in which public awareness was itself an element of, or a defense to, the claim at issue. Nothing comparable exists here. No element of RICO standing, no element of a substantive RICO violation, no requirement of Rule 9(b), and no prong of the anti-SLAPP or Noerr-Pennington analysis turns on whether the public was aware of the articles collected in Defendants' exhibits. Defendants nowhere explain how the fact that these articles are in the public realm is "relevant to the resolution of the plaintiff's claims," and the omission is telling. (MTD at 1-2.) Courts in this District deny judicial notice for precisely this reason. *See Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1029–30 (C.D. Cal. 2015) (denying request for judicial notice of newspaper articles and press releases because it was "irrelevant, for purposes of defendants' motion to dismiss, that the information in the press releases and news articles was publicly available. . .").

2. <u>Defendants use the articles for their truth or to ask the Court to draw improper inferences, and what can be noticed is irrelevant</u>

The "public realm" rationale is, in practice, a vehicle for admitting these exhibits for the truth of the matters asserted or to ask the Court to draw improper inferences which is entirely improper. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (quoting *Premier Growth Fund v. Alliance Capital Mgmt.*, 435 F.3d 396, 401 n.15 (3d Cir. 2001)) ("Courts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'"). Courts consistently decline to take judicial notice when the requesting party is clearly seeking to establish the truth of the facts reported in the article, rather than merely the fact of publication. *See Gerritsen*, 112 F. Supp. 3d at 1029 (collecting cases).

Defendants' use of the exhibits in their Motion to Dismiss confirms that judicial notice is improper.

ROSEN ✧ SABA, LLP
2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245

ROSEN ✧ SABA, LLP
2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245

**a. <u>Exhibits A & Q</u>**

Exhibit A is a UK government press release, and Exhibit Q collects an EUR-Lex excerpt, a UK Sanctions List entry, and an entry on OpenSanctions.org.

Plaintiffs do not dispute that the Court may take judicial notice of an official government publication of the kind found in Exhibits A and Q. *See Gerritsen*, 112 F. Supp. 3d at 1033-34. But "a court that takes notice of a website need not take notice that the contents of the website are true," and "a court cannot take judicial notice of disputed facts contained in such public records. *Evo Brands, Ltd. Liab. Co. v. Al Khalifa Grp. Ltd. Liab. Co.*, 657 F. Supp. 3d 1312, 1322 (C.D. Cal. 2023); *see also Khoja*, 899 F.3d at 994; *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).

The Court may therefore notice that the United Kingdom issued the press release on the date it bears, that it announced sanctions against named individuals and entities, and that Troost and Paramount were designated. *See Gerritsen*, 112 F. Supp. 3d at 1033-34. However, the Court may not notice the disputed assertions within these exhibits for their truth, including the regulators' purported findings about Troost's conduct and the alleged reasons for the designations. *Evo Brands, Ltd. Liab. Co.*, 657 F. Supp. 3d at 1322; *see also Khoja*, 899 F.3d at 994; *Lee*, 250 F.3d at 690. Judicial notice of these exhibits is also unnecessary. The fact that Troost and Paramount were sanctioned is already alleged in the FAC. (*See* FAC ¶ 341.) A court need not take notice of a fact that a pleading already supplies, and the request should be denied on that ground alone. *See Turnacliff*, 546 F.3d at 1120 n.4 (denying request for judicial notice of irrelevant facts).

Defendants, however, seek to offer Exhibits A and Q to establish *why* Troost and Paramount were sanctioned and to draw legal conclusions from that premise. At page 23 of the memorandum, Defendants cite Exhibit Q for the assertion that "Plaintiffs cannot seriously dispute that they violated international sanctions by selling Russian oil after the embargoes went into effect." (MTD at 23.) Whether Plaintiffs violated international sanctions and why foreign regulators acted are

disputed questions. Rule 201 does not permit their resolution on a motion to dismiss. *See BCS Bus. Consulting Servs. Pte. Ltd. v. Baker*, 755 F. Supp. 3d 1285, 1298 (C.D. Cal. 2024) ("[T]he legal arguments that [the plaintiff] seeks to infer from those documents are disputed, and, therefore, they are not subject to judicial notice.").

**b. Exhibits H, I, J, K, and P**

While the citations in Defendants' Motion to Dismiss are unclear,[1] Exhibit H, I, J, K, and P consist of news articles that Defendants apparently rely upon to argue that Troost is using "the litigation process to generate favorable publicity," has "orchestrated the publication of literally hundreds of articles (more than 350) that falsely cast Srivastava as a 'fake spy' and a fraud," and has "spread [a] false narrative…portraying himself as the innocent victim of Srivastava's elaborate fake-spy fraud." (MTD at 11).

Defendants further cite to Exhibit I to argue that "*The Independent* published a pro-Troost article one day after the original Complaint in this case was filed, including extensive quotes from Masimore attacking Srivastava as the 'ringleader' of 'massive criminal conspiracy' that 'compromised US national security and top-level political leadership.'" (MTD at 11 n. 8). Defendants similarly use Exhibit P to argue: "In recent weeks, the Srivastava Defendants have identified dozens more pro-Troost articles and posts in pay-for-play outlets such as *The Times of India*, *OCCRP*, *Outlook*, and many others." (MTD at 11 n.8).

Not one of these exhibits is offered to establish that the articles were in the public realm. Each is offered to argue that Troost purportedly orchestrated a paid media campaign, which is both contested and not relevant to the Motion to Dismiss.

[1] Defendants cite to "Exs. I-M" in arguing that "Troost also has spread his false narrative through interviews with the *Wall Street Journal*, *The Financial Times*, and other publications. . . ." (MTD at 11.) However, it appears that Defendants intended to cite to Exhibits H, I, J, K, and P as those exhibits are the news articles attached to the Salvaty Declaration. (*See* Salvaty Decl. ¶¶ 9-12, 17.) Defendants' failure to cite the correct exhibits throughout their motion to dismiss makes it incredibly difficult to assess what documents they are using to support which arguments, and provides a further basis for why the Request should be denied in full.



ROSEN ✧ SABA, LLP
2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245

Defendants' citations are also unclear. Defendants cite Exhibit I while describing "*The Independent*," but Exhibit I is a Wall Street Journal article and The Independent article is Exhibit H. (MTD at 11.) Defendants cite Exhibit H while describing an attorneys' fees order issued by a judge of this District, but Exhibit H is the Independent article and the fee order is Exhibit O. (MTD at 11.) The "Exs. I-M" block likewise sweeps in materials that are not publications at all: Exhibit L is private correspondence and Exhibit M is a filing in a Swiss court. When the proponent cannot identify its own exhibits correctly, the Court cannot find that the facts they supply are "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

3. Exhibit P lacks reliability.

Exhibit P fails for a further independent reason because it was created by Defendants' counsel and lacks any indicia of reliability. It consists of "the first page of a July 9, 2026 Google news search for 'gaurav srivastava'" run by counsel, together with "copies of several articles and posts that have appeared between June 30, 2026 and July 7, 2026" that counsel selected. (Salvaty Decl. ¶ 17.) A counsel-generated search snapshot is not a source whose "accuracy cannot reasonably be questioned," and courts view requests to notice party-created documents with "skepticism." Fed. R. Evid. 201(b); *Gerritsen*, 112 F. Supp. 3d at 1031; *see also Xsolla USA, Inc. v. Aghanim Inc.*, 2024 WL 4139615, at *1 (C.D. Cal. Sept. 10, 2024) ("[C]ourts are reluctant to take judicial notice of Google search results because they are continually changing and thus cannot be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.") (citations and quotation marks omitted). The Salvaty Declaration itself confirms the exhibit's incompleteness, describing the compilation as "by no means all" of the responsive material and "a fraction of the total universe." (Salvaty Decl. ¶ 17.) A curated subset of search results, from which opposing counsel excluded an unknown quantity of material, cannot establish the scope, nature, or orchestration of media coverage. Those are contested



ROSEN ✧ SABA, LLP
2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245

factual inferences that Rule 201 does not permit. The self-admitted incompleteness of Exhibit P also makes it impossible for the Court to draw the factual inferences Defendants seek—namely, that Troost "orchestrated" a media campaign and that there are "dozens more pro-Troost articles" in "pay-for-play outlets." (MTD at 11 n.8.) "[J]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja*, 899 F.3d at 999.

**B. The Court Should Deny Judicial Notice of Court Filings from Other Proceedings (Exhibits B, C, E, F, G, L, M, N, O, and R)**

The Ninth Circuit has made clear that "taking judicial notice of findings of fact from another case exceeds the limits of Rule 201." *Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir. 2003), overruled on other grounds by *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014). On a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so "not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Lee*, 250 F.3d at 690 (citation and quotation marks omitted); *M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983) ("As a general rule, a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it."); *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1113 (C.D. Cal. 2003) (taking judicial notice only of the "existence and legal effect" of documents submitted in other proceedings). That said, courts will not take judicial notice of proceedings in other courts unless they "have a direct relation to the matters at issue." *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (quoting *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979)).

Defendants seek judicial notice of ten exhibits consisting of court filings and

ROSEN ✧ SABA, LLP
2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245

ROSEN ✧ SABA, LLP
2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245

orders from other proceedings, representing that they seek notice "not for the truth of the matters asserted but to establish the fact of these filings and court orders." (RJN at 2.)

That assertion cannot be reconciled with the memorandum Defendants actually filed. Throughout the Background section, Defendants quote these filings' factual allegations, investigative conclusions, and characterizations, and they do so for the express purpose of contradicting the FAC. Defendants do not cite these exhibits to show that litigation occurred or the existence of an opinion but cite them to argue that Plaintiffs' allegations are false. Even accepting Defendants' representations, the fact these other proceedings occurred and orders exist is irrelevant to any claim or defense before this Court.

1. <u>Exhibits B and C: The Arkin Group's pleading and memorandum of law are used wholesale for the truth of their contents</u>

Exhibit B is The Arkin Group's Answer, Affirmative Defenses, and Counterclaim in *Troost v. The Arkin Group DE LLC*, Index No. 150236/2026 (N.Y. Sup. Ct.). Exhibit C is The Arkin Group's Memorandum of Law in support of its motion to dismiss in *Troost v. The Arkin Group DE LLC*, No. 25-cv-6487 (S.D.N.Y.). Both are adversarial advocacy filed by an opposing party in separate litigation. Defendants cite them not to establish that those filings exist, but to import their contents as fact.

For example, Defendants rely on Exhibit B to reproduce The Arkin Group's "point-by-point rebuttal" of Troost's allegations (MTD at 4) and to cast Troost as the party who "engaged in widespread fraud" (MTD at 7–8). They similarly rely on Exhibit C to construct their entire Background narrative, including the assertions that the spy allegations are "false" (MTD at 12) and that Troost "orchestrated the publication of literally hundreds of articles (more than 350)" (MTD at 11 (citing Ex. C at 9, 11-13)). Each of these is a contested factual assertion drawn from an adversary's brief. A brief filed by an opposing party in another case is not a source

whose accuracy cannot reasonably be questioned, and its contents are not judicially noticeable for their truth.

That the Arkin Group's litigation filings cannot be relied upon for their truth is further underscored by the fact that the Arkin Group recently *disavowed and retracted* their statements regarding Troost. *See* Exhibit B to Plaintiffs' MTD Opp. More specifically, on August 25, 2026, the Arkin Group publicly stated: "The Arkin Group and [their investigator] believe their statements that Mr. Troost falsely claimed that Mr. Srivastava posed as a U.S. intelligence operative during their dealings were inaccurate and they withdraw all such statements about Mr. Troost." *Id.* Indeed, the Arkin Group also explained that having reviewed the recordings set out in the FAC of conversations between Troost and Srivastava during which Srivastava claimed to be a secret CIA operative, "These recordings and documentation reflect that Mr. Srivastava claimed to Mr. Troost and others that he was a U.S. intelligence operative." *Id.*

Moreover, what is actually noticeable about Exhibits B and C, the fact that they were filed, is irrelevant. *See Turnacliff*, 546 F.3d at 1120 n.4 (denying request for judicial notice of irrelevant facts). The fact of filing establishes nothing bearing on RICO standing, the RICO elements, Rule 9(b), the state-law claims, or the anti-SLAPP analysis—particularly, where, as here, admission of the filings would be misleading because the Arkin Group has now acknowledged that those filings' attempted rebuttal of Troost's allegations *were inaccurate*. The Arkin Group has now admitted that "Mr. Srivastava claimed to Mr. Troost and others that he was a U.S. intelligence operative."

In substance, Defendants ask the Court to accept as true what a party adverse to Troost asserted in its own pleadings in another forum. Rule 201 does not permit that, and the request as to Exhibits B and C should be denied.

2. <u>Exhibits E, F, G, and O concern unrelated proceedings and are offered solely to support improper inferences</u>

ROSEN ✧ SABA, LLP
2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245

Exhibits E, F, G, and O are court orders and notices from proceedings unrelated to this action. Defendants use them not to establish that those proceedings occurred, but to invite (false) inferences about Plaintiffs' conduct that Rule 201 does not permit.

Defendants never explain how the filing or disposition of these unrelated matters bears on the Motion to Dismiss. They cannot. These proceedings involve different parties, different defendants, and different claims, and they therefore lack the "direct relation to matters at issue" that *Borneo* requires. 971 F.2d at 248. The purpose is instead to have the Court draw inferences about Plaintiffs' litigation conduct from proceedings involving other parties and other claims, which exceeds the limits of Rule 201.

Exhibit E is the minute order on a "Hearing on Ex Parte Application for an order Authorizing Attorneys for Niels Troost to Attend the Deposition of Non-Party Gaurav Srivastava" in *Paramount Energy & Commodities SA, in Liquidation v. Baker & Hostetler, LLP*. Exhibit F is the notice of voluntary dismissal in *Troost v. The Arkin Group*. Exhibit G is the minute order dismissing the amended complaint in *Masimore v. Srivastava*, and Exhibit O is the order awarding attorneys' fees in that same case—a case brought by different plaintiffs, against a different defendant, on different claims. None of these proceedings involve the same parties and issues presented here.

The Court may notice that these documents appear on court dockets. It may not notice the truth of what they recite, nor adopt Defendants' characterizations of them. And the noticeable fact, that these dockets and the filings therein exist, bears on no issue before the Court at the pleading stage.

Defendants' citations to these exhibits are again unclear. At page 11 of their Motion to Dismiss, Defendants attributes the attorneys' fees award to "Ex. H," but Exhibit H is a news article published by The Independent. More consequentially, Defendants cite Exhibits O and P in their *forum non conveniens* argument for the proposition that "There have been numerous criminal and civil Swiss proceedings over these same issues over the past several years, and several are ongoing." (MTD

ROSEN ✧ SABA, LLP
2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245

at 20.) However, Exhibit O is an attorneys' fees order from this district and Exhibit P is a compilation of news articles.

3. Exhibit L is private correspondence that bears on no issue before the Court

Exhibit L is a letter from Jason Masimore to Greenberg Glusker LLP dated January 22, 2024, previously attached to the complaint in *Masimore v. Srivastava*, Dkt. 1-7.

Defendants use it twice. First, within the "Exs. I-M" block supporting the claim that Troost "has orchestrated the publication of literally hundreds of articles (more than 350) that falsely cast Srivastava as a 'fake spy' and a fraud" and "has spread his false narrative through interviews with the Wall Street Journal, The Financial Times, and other publications, portraying himself as the innocent victim of Srivastava's elaborate fake-spy fraud." (MTD at 11.) Second, to support the assertion that "[t]he story also has been spread by letters of agents of Troost (including Masimore) to Srivastava's personal and professional contacts, his travel agent, his mortgage broker, recipients of his political campaign donations, and even parents at his children's school," with a parenthetical describing the letter as "detailing fake spy allegations and accusing one of firm's transactional partners of 'improper conduct' and ethical violations through representation of Srivastava." (MTD at 12.)

Exhibit L is noticeable, if at all, only for the fact that it was filed as an attachment to a complaint in another case. That fact, however, is irrelevant. Correspondence between counsel and a law firm in January 2024 bears on no element of any claim or defense before this Court. Defendants' second use of the letter is also miscited: the memorandum attributes it to Exhibit N, which is a communication from a Swiss court. (MTD at 12.) Judicial notice should be denied.

4. Exhibits M and N are automated translations offered for purposes they cannot serve

Exhibit M is expressly described as "an automated translation of a filing made



ROSEN ✧ SABA, LLP
2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245

in the Court of First Instance of the Republic and Canton of Geneva by Plaintiff EZI-Diaroc Holding SA, dated May 16, 2025, concerning C/14454/2024." Exhibit N is likewise "an automated translation of a communication made by the Court of First Instance of the Republic and Canton of Geneva concerning C/14498/2024."

Neither document satisfies Rule 201(b), which requires a source "whose accuracy cannot reasonably be questioned." *See also Roar Spirits, LLC v. Sutter Home Winery, Inc.*, 2025 WL 523898, at *4 (N.D. Cal. Feb. 18, 2025) (denying request for judicial notice of a google-translated document because it lacked reliability). A machine-generated translation of a foreign-language legal filing is not such a source. *See id.*

Automated translations also fail to satisfy the authentication requirements for foreign-language documents. Under Federal Rule of Evidence 901(b)(6), a writing in a foreign language must be authenticated by testimony or a certification that the translation is accurate. No certified translator's attestation accompanies Exhibits M or N; instead, Defendants offer only a machine-generated output. A document that cannot be properly authenticated as an accurate translation cannot qualify as a source "whose accuracy cannot reasonably be questioned" under Rule 201(b).

Exhibit N establishes nothing. It is a two-paragraph procedural communication stating that a letter had been forwarded and that "the case will be heard on the securities as of 15 August 2025." It confirms the existence of a docket number. It does not (because it cannot) establish that any Swiss tribunal is adjudicating the claims pled in the FAC, which is not something that matters in any event. Accordingly, Exhibit N is irrelevant and judicial notice is improper.

5. <u>Exhibit R may be noticed as a filing, but Defendants use it only for the court's reasoning</u>

Exhibit R is an English translation of a Swiss decision available in the original French. Defendants cite it twice, and both citations reach for the decision's substance rather than its existence. Specifically, Defendants cite Exhibit R only to argue that a

ROSEN ✧ SABA, LLP
2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245

Swiss court found Troost's spy allegations as "implausibl[e]." (MTD at 12-13, 20.) But Defendants mischaracterize the Swiss court's holding. The decision addressed whether the specific statutory elements of fraud under Article 146 of the Swiss Criminal Code were met—in particular, whether the alleged conduct constituted legally cognizable "deception" and "astuce" (cunning)—and concluded, based on Swiss criminal standards, they were not. It was a procedural ruling on whether particular criminal-law elements were satisfied, not a merits adjudication of the truthfulness of the fraud allegations themselves.

The Court may only notice that the decision exists. It may not adopt the decision's findings, its characterizations of the evidence, or its view of the plausibility of Plaintiffs' allegations. Those are precisely the "findings of fact from another case" that Rule 201 does not reach. *See Wyatt*, 315 F.3d at 1114. Because Defendants offer Exhibit R for nothing else, the request should be denied.

### C. The *Forum Non Conveniens* Rationale Does Not Support Notice of Any Exhibit

Defendants advance a fallback rationale, citing *Lueck v. Sundstrand Corp.*, 236 F.3d 1137 (9th Cir. 2001), for the proposition that the Court may "evaluat[e] information outside the Complaint to decide [a] motion to dismiss for forum non conveniens." (RJN at 3.) Even accepting that premise, it does not carry the RJN, because the exhibits Defendants actually cite cannot bear on the *forum non conveniens* analysis.

Even if each exhibit is noticed for its existence, none establishes that any pending Swiss proceeding involves the same parties, the same operative facts, and the same claims as the FAC—which is the threshold showing required for *forum non conveniens*. *See Tatung Co. v. Shu Tze Hsu*, 43 F. Supp. 3d 1036, 1051-52 (C.D. Cal. 2014) (describing burden of showing *forum non conveniens*). Exhibit O is an attorneys' fees order from this District, not from Switzerland. Exhibit P is a compilation of news articles that says nothing about the existence or status of Swiss

ROSEN ✧ SABA, LLP
2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245

ROSEN ✧ SABA, LLP
2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245

proceedings. Exhibit C is a memorandum of law filed in the Southern District of New York, not a Swiss filing. Exhibit R is a Swiss criminal appellate ruling addressing narrow questions under Article 146 of the Swiss Criminal Code, not a pending civil proceeding adjudicating Plaintiffs' RICO and fraud claims. And Exhibit D is the SPA itself, which contains a forum selection clause but does not evidence the existence of any ongoing proceeding.

Defendants' own declaration confirms the gap: the only support offered for the existence of ongoing Swiss proceedings is Mr. Salvaty's statement that he has "been informed and believe[s]" that such proceedings exist. (Salvaty Decl. ¶ 20.) As set forth in Section E below, Paragraph 20 should be stricken for lack of personal knowledge. Once stricken, Defendants' sole evidentiary foundation for the existence of ongoing Swiss proceedings disappears, and the *forum non conveniens* rationale for the entire RJN collapses.

The *forum non conveniens* rationale therefore provides no independent basis for taking judicial notice of any exhibit, and the Court should decline to consider these documents for that purpose.

**D. The Court Should Decline to Consider the Share Purchase Agreement (Exhibit D), or at Minimum Should Limit Its Consideration to the Provisions Actually Referenced in the FAC**

A document that is not attached to a complaint may be incorporated by reference into a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908.

The doctrine does not apply here. The SPA is not referred to "extensively" in the FAC, and it does not "form the basis" of Plaintiffs' claims.

Defendants concede the first point. Their memorandum states that "the FAC barely mentions the SPA by name." (MTD at 6.) The second point follows from the claims pled. As discussed in Plaintiffs' concurrently filed Opposition, the SPA is not at the center of this dispute. Plaintiffs plead claims under RICO and for fraudulent misrepresentation, conversion, and violation of California's Unfair Competition Law.

Those claims sound in fraud, not in contract, and none necessarily depends on the SPA's terms. In any event, even if the SPA were incorporated by reference, the Court could not use it to contradict the well-pled allegations in the FAC at the Rule 12(b)(6) stage. *See Khoja,* 899 F.3d at 1003 ("Submitting documents not mentioned in the complaint to create a defense is nothing more than another way of disputing the factual allegations in the complaint. . ." in which "the plaintiff receives no opportunity to respond to the defendant's new version of the facts."). Should the Court nonetheless consider the SPA, consideration should be confined to the provisions the FAC actually references, and the SPA's contents should not be treated as establishing any disputed fact.

### E. Paragraph 20 of the Salvaty Declaration is Inadmissible

Finally, Plaintiffs object to Paragraph 20 of the Declaration of Paul B. Salvaty, which states: "I have been informed and believe that there are multiple ongoing or recent Swiss proceedings involving the same parties and operative facts and disputes described in Plaintiffs' Complaint, including C/11454/2024 1234 Holding SA v. EZI-Diaroc Holding SA; C/11012/2024 1234 Holding SA v. EZI-DIAROC Holding DA; C/25799/2024 1234 Holding SA v. Paramount Energy & Commodities SA; and C/14498 Srivastava v. Troost."

The paragraph is not based on personal knowledge. Counsel states only that he has "been informed and believe[s]" that these proceedings exist and that they involve "the same parties and operative facts." (Salvaty Decl. ¶ 20.) That is an assertion of belief, and the characterization it advances, that the Swiss matters involve the same parties and the same operative facts as the FAC, is precisely the disputed proposition Defendants must establish for their threshold jurisdictional argument. It cannot be supplied by a declarant's belief, and it is not a matter subject to judicial notice. Paragraph 20 is plainly inadmissible and should not be considered by the Court.

## IV. <u>CONCLUSION</u>

Taken as a whole, the RJN asks this Court to resolve contested facts on the

pleadings. Eighteen exhibits spanning hundreds of pages are offered under a handful of generic rationales, and the memorandum then draws from them a complete alternative account of events. Granting the request would convert a Rule 12 motion into a merits adjudication without discovery, without evidence, and without the protections Rule 12 exists to provide. It would also risk prejudicing Plaintiffs at the earliest stage of litigation by allowing nearly 400 pages of contested material to frame the Court's initial impression of the case, even if the Court nominally takes notice only of the existence of these documents.

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) deny the Srivastava Defendants' Request for Judicial Notice in full; (2) in the alternative, take judicial notice only of the existence of Exhibits A through R and the fact that they were published or filed, and expressly decline to take notice of any assertion within them for its truth; and (3) disregard Paragraph 20 of the Salvaty Declaration.

DATED: August 26, 2026

ROSEN ✧ SABA, LLP

By: Ryan Saba
RYAN D. SABA, ESQ.
ALLISON OWENS, ESQ.
Attorneys for Plaintiffs

BRODBECKS LAW PLLC

By: /s/ Jason A. Masimore
JASON A. MASIMORE, ESQ.
(*pro hac vice*)

*Attorney for Plaintiffs*

ROSEN ✧ SABA, LLP
2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245